Dorothy ROBINSON, Personal Representative of the Estate of Rosa L. Walls, Appellant,

v.

HOWARD UNIVERSITY, Appellee.

No. 81–1450.

District of Columbia Court of Appeals.

Submitted Nov. 10, 1982.

Decided Jan. 26, 1983.

Charles R. Claxton, Washington, D.C., for appellant.

Hugh E. Donovan, Silver Spring, Md., for appellee H.W. Williams.

John Jude O'Donnell, Washington, D.C., for appellee D.H. Pendergrast.

John F. Mahoney, Jr., Washington, D.C., for appellee Howard University.

Before NEWMAN, Chief Judge, and KERN and TERRY, Associate Judges.

KERN, Associate Judge:

Appellant Dorothy L. Robinson, personal representative for the estate of Rosa L. Walls, challenges the propriety of the trial court's assessment of certain costs against her following two and one-half days of trial which ended in a mistrial.

In April 1979, appellant filed this action in behalf of the Walls estate and was granted leave to proceed *in forma pauperis* by an order of the court waiving payment by her of "all court costs" and relieving her from "prepayment of witness fees." (Record at 25.) That order also stated that appellant would be required to pay "all taxable costs and appropriate witness fees" from the proceeds of any recovery. (*Id.*)

On November 24, 1980, after the pretrial conference had been held and only 11 days before trial commenced, appellant's attorney notified defense counsel of additional proposed testimony of appellant's expert witness—testimony which the trial court later found would have "changed profoundly" the scope of the trial. (Supp. Record at 5.) The following day, appellees moved to restrict the expert witness' testimony to matters previously disclosed pursuant to Super.Ct.Civ.R. 26. No ruling was made by the trial court on that motion until the second day of trial, December 8, 1980, when it was granted. (Record at 50.) The court noted the "intolerable risk to prejudice" to the appellees in not having adequate time to prepare to meet the new testimony; but also recognizing that the additional testimony would have been a significant part of appellant's case, the court suggested that a mistrial might be appropriate. (Supp. Record at 6–7.)

The next day, appellant requested and was granted a mistrial; however, the court conditioned the mistrial upon appellant's paying costs. Appellant did not object at that time to the imposition of costs. (Supp. Record at 9–11.)

Accordingly, on July 7, 1981, the trial court entered an order directing appellant to pay "per diem" costs of $250 to each defense counsel and to each individual defendant who prevailed on the merits. (Record at 15.) A new trial held in September 1981 resulted in a verdict for the appellees; and following that trial, costs were assessed against appellant in the amount of $3890, representing $140 in witness fees and $3750 awarded pursuant to the July 7 order as "per diem" costs.

Appellant makes two arguments here on appeal.[1] First, she contends that the trial

---

1. The appellees contend that this appeal was untimely since it was filed on October 30, 1981. The order of judgment is dated November [September] 29, 1981, and is file-stamped October 1, 1981; however, the docket sheet reflects that the verdict and order of judgment were actually entered on September 29, 1981. (Record at 16, 59.) A judgment, rendered in the presence of the parties, is deemed to be entered, for purposes of a notice of appeal, when entered in the civil docket, *i.e.,* September 29, 1981. D.C. App.R. 4II(a)(3). Therefore, if the appeal in this case were from the order of judgment, it would be untimely since it was not filed until 31 days later. However, in this case, the order actually appealed from is the February 26, 1982 order taxing costs in a specific amount. *Trilon Plaza Co. v. Allstate Leasing Corp.,* D.C.App., 399 A.2d 34, 35–37 (1979). Technically, the October 30 appeal of the February order is premature, since at the time the appeal was taken, the order taxing costs was not yet "final" as required by D.C.Code 1981, § 11–721(a). However, by the time the appeal was

**1366**

court abused its discretion in taxing costs against her because she was proceeding *in forma pauperis* and was therefore relieved of any obligation to pay costs, absent a showing of bad faith or other misconduct, unless she recovered a judgment against appellees. Second, appellant maintains that, even if the award of costs against an unsuccessful *in forma pauperis* party were proper, the trial court abused its discretion in ordering payment of these "per diem" costs (1) because no statute, rule, or practice authorizes the award of unspecific "per diem" costs, and (2) because the "per diem" costs awarded to appellees' attorneys are actually attorney fees, and may not be awarded absent a showing of "unwarranted, oppressive, or vexatious conduct." *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Coop.*, D.C.App., 385 A.2d 20, 24 (1978).

**I**

Appellant's first assertion, that costs may not be awarded against an unsuccessful plaintiff *in forma pauperis,* is not well founded. The District of Columbia statute authorizing the courts to permit parties to proceed *in forma pauperis* refers only to the waiver of *"pre*-payment" of "fees and costs or security therefor."[2] D.C.Code 1981,

§ 15–712 (emphasis added). The applicable court rule only relieves a party of the obligation to pay costs in advance or as they accrue; it provides no mechanism for the eventual payment of costs by anyone other than the *in forma pauperis* litigant. Super. Ct.Civ.R. 54–II.

■ It is a long-established rule that leave to proceed *in forma pauperis* does not absolve a party from the ultimate responsibility of paying the costs of litigation:[3]

The effect of statutes permitting proceedings in forma pauperis ordinarily is not to relieve the pauper from eventual payment of costs but merely to postpone payment until final determination of the case .... [20 C.J.S., *Costs* § 146, at 385.]

A person proceeding in forma pauperis is ordinarily not relieved of the eventual payment of costs in the event of an adverse determination of the case against him. [20 Am.Jur.2d, *Costs* § 47, at 38.]

In arguing that costs may not properly be assessed against a party proceeding *in forma pauperis,* appellant relies upon *Harris v. Harris,* 137 U.S.App.D.C. 318, 424 F.2d 806, *cert. denied,* 400 U.S. 826, 91 S.Ct. 50, 27 L.Ed.2d 55 (1970), in which the court held that the intent of the District of Columbia

submitted to this panel, it was final. In a criminal case in which an appeal was filed after conviction but before sentencing, we dismissed the appeal for lack of jurisdiction. *West v. United States,* D.C.App., 346 A.2d 504 (1975). However, the concerns which led us to deny premature criminal appeals do not apply in the case before us. *See Carr v. Brown,* D.C.App., 395 A.2d 79, 82 (1978) (noting that other appellate courts have found jurisdiction in civil cases even though the appeal was technically premature).

2. The federal *in forma pauperis* statute, 28 U.S.C. § 1915 (1966), refers to "costs" in language identical to that of the District of Columbia statute. That language has been construed to postpone payment only of such costs as are ordinarily required by the court to be incurred (such as filing fees, marshal and process fees, jury fees, transcript fees, and security bonds), and *not* to affect a litigant's obligations for additional expenses such as attorney's fees. *See Marks v. Calendine,* 80 F.R.D. 24, 28 (N.D.

W.Va.1978); Catz, Guyer, Federal In Forma Pauperis Litigation: In Search of Judicial Standards, 31 Rut.L.Rev. 655, 660–61 (1978); Annot., 20 A.L.R.Fed. 274 (1974). Moreover, the court order granting appellant leave to proceed *in forma pauperis* only waived payment of *court* costs and *prepayment* of witness fees. Thus, the award of witness fees and costs other than ordinary court costs does not conflict with the court's order.

3. *Marks v. Calendine, supra,* 80 F.R.D. at 27–28 (interpreting the provisions of 28 U.S.C. § 1915(a), which are similar to those of the District of Columbia statute, and not relying upon § 1915(e)). The court in *Marks* concluded that references in other cases to the "immunity" of *in forma pauperis* parties were intended only to indicate the "inability of a court or prevailing party to enforce a judgment against one who has no money rather than indicating any shield erected by the grant of *in forma pauperis* status." *Id.* at 28.

*in forma pauperis* statute is "to make available to the indigent, in common with his fellow citizen, the full range of civil remedies contrived by court or legislature . . . ." *Id.* 137 U.S.App.D.C. at 322–23, 424 F.2d at 810–11. However, the rule that an indigent is not relieved entirely of the responsibility for the costs of litigation is not inconsistent with *Harris:* it ensures that an indigent party, like any other litigant, will have access to the courts for the resolution of disputes, but will weigh the costs of litigation against the likelihood of success before proceeding in court.[4]

■ Finally, appellant contends that, because the District of Columbia *in forma pauperis* statute contains no provisions expressly permitting the courts to assess costs against an *in forma pauperis* party at the conclusion of the suit, the trial court had no authority to do so here. Appellant points to the fact that the federal statute, by contrast, explicitly states that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other cases . . . ." 28 U.S.C. § 1915(e). However, the failure of the District of Columbia statute to include such a provision is not significant in light of the established practice of the courts in assessing costs against indigent plaintiffs proceeding *in forma pauperis.*[5] Moreover, the federal statute does not provide any new authority to the federal courts to assess costs. It states only that costs may be assessed "as in other cases," *e.g.,* pursuant to Fed.R.Civ.P. 54(d).[6] *Maldonado*

*v. Parasole,* 66 F.R.D. 388, 390 (E.D.N.Y. 1975); *see Marks v. Calendine, supra,* 80 F.R.D. at 28.

■ Some opinions have contained language suggesting that costs were assessed against *in forma pauperis* parties because they were proceeding in a malicious or frivolous manner. *E.g., Duhart v. Carlson,* 469 F.2d 471, 478 (10th Cir.1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973); *Perkins v. Cingliano,* 296 F.2d 567, 569 (4th Cir.1961); *Holsey v. Bass,* 519 F.Supp. 395, 406 (D.Md.1981). However, we conclude that the court is not *required* to make such a finding of malice or bad faith in order to assess costs against a party proceeding without prepayment of costs under D.C.Code 1981, § 15–712. Costs may be assessed against a party proceeding *in forma pauperis* at the conclusion of an unsuccessful suit as in any other case, according to the standards applicable to Super.Ct. Civ.R. 54(d) and in the exercise of the court's equitable discretion.[7]

## II

■ The question then is whether the trial court abused its discretion in awarding costs to the appellees following the mistrial which was necessitated by appellant's eve-of-trial request to expand the scope of her expert testimony.

The posture of this case at the time costs were initially taxed, following the grant of a mistrial, was very much like that in *Par-*

---

4. In fact, in *Harris,* the court explained that "D.C.Code § 15–712 provid[es] for the prosecution of all suits by indigents without *prepayment or deposit* of costs upon presentation of satisfactory evidence that the plaintiff is indigent and unable to make *deposit* of costs." *Id.* at 323, 424 F.2d at 811 (emphasis added).

5. Most statutory provisions have been construed to permit judgment for costs at the conclusion of the suit because they, like the District of Columbia statute, only encompass prepayment of costs. Litigation Costs: The Hidden Barrier to the Indigent, 56 Geo.L.J. 516, 524 n. 55 (1968). Since the enactment of the first *in forma pauperis* statute in the year 1494 the prevailing practice has been to tax costs against the unsuccessful *in forma pauperis*

plaintiff. Catz, Guyer, *supra,* at 656–58, citing 11 Hen. 7, c. 12 (1494).

6. Fed.R.Civ.P. 54(d) states that "costs shall be allowed as of course to the prevailing party." Super.Ct.Civ.R. 54(d) is substantially identical to the federal statute.

7. Some courts, in exercising their discretion to award costs at the conclusion of a suit, have declined to impose costs upon an indigent where there is a wide disparity of economic resources between the parties. *See Maldonado v. Parasole, supra,* 66 F.R.D. at 390. However, appellant has not argued, and we do not think, that a contrary result necessarily constitutes abuse of discretion.

*askevas v. McKee Auto Service, Inc.,* D.C. App., 162 A.2d 488 (1960). In *Paraskevas,* this court held the assessment of costs against a plaintiff to be a proper condition to the dismissal of a lawsuit when the plaintiff sought the dismissal in order to proceed with a *second* suit he had instituted in *another* court (based on the same cause of action but for significantly greater damages). Because the trial courts in *Paraskevas* "could, and possibly should" have given the plaintiff the opportunity to elect as to which case would be prosecuted we affirmed the award of costs.[8] 162 A.2d at 490.

In the case before us, the trial court could, and possibly should, have insisted that appellant proceed to trial with her evidence as limited by the pretrial statements and the pretrial order; and in permitting the appellant to take a mistrial the trial court probably gave her more than she had a right to ask.[9]

Appellant apparently did not object to the imposition of costs at the time this mistrial was granted. Nor is it clear from the record that appellant was unaware that costs might be awarded if a mistrial were granted. Further, appellant does not contend that appellees were not the "prevailing" parties within the meaning of Rule 54(d) at the time the costs in question were

finally imposed, following the second trial. Under these circumstances, we conclude that there was no abuse of discretion in the conditioning of a mistrial upon appellant's paying the costs of the first trial, or in the assessment of those costs against appellant as a matter of course at the conclusion of the suit pursuant to Rule 54(d).

### III

We turn, finally, to appellant's contention that, even if costs were properly assessed against her, "per diem" costs are not properly recoverable items of costs.

■ "Costs," as used to refer to those items a prevailing party is entitled to recover as a matter of course, has been construed to mean something less than a litigant's total expenses in connection with the suit. Court fees and witness fees ordinarily are recoverable but, absent unusual circumstances, the parties must bear their personal expenses and the expenses of attorney travel and lodging and attorney's fees. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2666 (1973), at 126; *see Hodge v. Seiler,* 558 F.2d 284, 287 (5th Cir.1977).

■ The authority of a court to assess a particular item as costs is partly a matter of statute (or court rule),[10] and partly a

8. This case is also similar to *Williams v. Getz,* 17 App.D.C. 388 (D.C.Cir.1901), in which the court sanctioned the use of a stay of proceedings as a means of enforcing an order to pay the costs of a previous suit, reasoning: "It has long been an established rule of practice . . . that where a former action has been *non prossed,* or *non suited,* or discontinued, by the direction of the plaintiff, that a second action for the same cause would not be allowed to be prosecuted, without, as a condition precedent, the costs of the former action be paid." *Id.* at 389. Although the action taken by the plaintiffs in *Paraskevas* (and apparently in *Williams*) was actually a voluntary dismissal, as distinguished from a mistrial, we view their reasoning as persuasive in a case such as this one, where the mistrial was essentially the result of voluntary action by a party to the proceeding.

9. In *Taylor v. Washington Hospital Center,* D.C.App., 407 A.2d 585 (1979), *cert. denied,* 446

U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980), we affirmed the trial court's dismissal of a case, *with prejudice,* on remarkably similar facts. Pretrial proceedings had been completed, and only two days remained before trial, when the plaintiff sought to expand the testimony of an expert witness to bring in new theories of liability. The trial court refused to permit the last-minute modification of testimony and denied a continuance; and when the plaintiff refused to go forward with the trial without the additional testimony, the court dismissed the case. The court in *Giovanetti v. Georgetown University Hospital,* 22 F.R.D. 493 (D.D.C.1958), *cert. denied,* 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959), likewise dismissed with prejudice on similar facts.

10. For example, 28 U.S.C. § 1920 (1966 and Supp.1982) permits the federal courts to tax court fees, witness fees, copying and printing expenses, and other such items as costs. The District of Columbia Code contains no such

matter of custom, practice, and usage. *Newton v. Consolidated Gas Co.,* 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909 (1924); *Adlung v. Gotthardt,* 103 U.S.App.D.C. 195, 257 F.2d 199 (1958). However, even as to special items of costs not representing customarily taxable court costs, the decision whether to allow or disallow the award is committed to the trial court's discretion. *Panos v. Nefflen,* D.C.App., 205 A.2d 600 (1964); *Shima v. Brown,* 78 U.S.App.D.C. 268, 140 F.2d 337, *cert. denied,* 318 U.S. 787, 63 S.Ct. 982, 87 L.Ed. 1154 (1943) ("Trial courts have large discretion in regard to costs, and it is not the function of appellate courts to substitute their own discretion"). Moreover, the courts have inherent power to levy sanctions—such as contempt, dismissal for failure to prosecute, or costs—in response to abusive litigation practices. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–2464–2465, 65 L.Ed.2d 488 (1980). This power, although it must be exercised with "restraint and discretion," is "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs ....'" *Id.,* quoting from *Link v. Wabash R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

▪ In the present case, we conclude that the trial court did not abuse its discretion in taxing these "per diem" costs to appellant after grant of the mistrial. The award of costs is clearly a lesser sanction than the dismissal with prejudice which Super.Ct.Civ.R. 41(b) permits and which we affirmed on comparable facts in *Taylor v. Washington Hospital Center, supra.* Other courts have held the assessment of costs for items which are not ordinarily taxable prop-

er in cases where one party was responsible for inconvenience and additional expense to the other. *E.g., Schneider v. Lockheed Aircraft Corp.,* 212 U.S.App.D.C. 87, 105–106, 658 F.2d 835, 853–54 (1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982) (award of *amicus* fees is proper if directed to be paid by party responsible for the situation that prompted the court to appoint the *amicus*); *Alonso v. Union Oil Co. of California,* 71 F.R.D. 523, 525 (S.D.N. Y.1976) (party required to pay travel expenses of opposing counsel in attending deposition since party arranged the deposition at an inconvenient place).

Even assuming *arguendo* that the "per diem" costs awarded to appellees' attorneys are actually attorney's fees, the record supports the award. Appellant had a responsibility under Rule 26 to apprise the court and appellees before trial of the scope of her expert testimony. Appellant's counsel conceded that appellant's Rule 26(b)(4) statement "did not give adequate notification." (Supp. Record at 6.) Appellant's suit had been active for over a year and seven months before this issue arose; and there is no evidence in the record before us that appellant ever indicated during that time that she was unprepared for trial or that she was still searching for additional critical evidence. In fact, the trial court observed that appellant had not sought a continuance and that this was a case in which appellant was "not fishing for an expert." (Supp. Record at 8, 9.) Given these factors, implicit in the trial court's conditioning the mistrial upon payment of costs was a finding of a level of misconduct tantamount to the bad faith required for an award of attorney's fees.[11] The trial court

explicit provision defining "costs," and Super. Ct.Civ.R. 54–I does not appear to be intended to be a complete listing of the costs which are properly taxable in the District courts. Thus, we are mindful of the Supreme Court's adjuration that "the discretion ... to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964).

11. Language in *Roadway Express, Inc. v. Piper, supra,* 447 U.S. at 767, 100 S.Ct. at 2464–2465, suggests that a specific finding of bad faith is required (and thus that it is not sufficient that it be implied). However, that opinion dealt with an award of attorney's fees taxed against an attorney, not a party; and the Court had already held that a remand for more specific findings was required for other reasons. We have affirmed the award of attorney's fees where the trial court has made observations

has the "unquestioned power" to do equity by awarding attorney's fees "against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978). For the same reasons that the "per diem" costs were assessed in the case before us—that the party charged with costs had caused unnecessary expense of time and money for the other parties—attorney's fees were permitted in *Paraskevas, supra.*

 Moreover, the record before us is not complete. In its July 7 order taxing costs following the mistrial, the trial court stated that three separate motions for allowance of fees and costs were filed and considered by the court, along with memoranda supporting and opposing those costs and affidavits. Appellant has not provided us with copies of those bills of costs and supporting documents. Therefore, we have no way of knowing that the unspecific "per diem" costs awarded did not, in fact, represent more typical, customarily assessed costs. At a minimum, absent a contrary showing by appellant, we must assume that the trial court fully considered the proposed costs submitted and properly exercised its discretion in approving a final sum. A losing party at trial bears the burden of convincing this court on appeal that the trial court erred, and "it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred." *Cobb v. Standard Drug Co.,* D.C.App., 453 A.2d 110 at 111 (1982). The burden is even greater when the standard of review is abuse of discretion, as it is here, rather than mere error.

*Affirmed.*

TERRY, Associate Judge, dissenting in part:

I would dismiss this appeal for lack of jurisdiction, on the authority of *West v.*

consistent with the required finding, as in this case. *Wisconsin Avenue Assoc., Inc. v. 2720 Wisconsin Ave. Coop., supra,* 385 A.2d at 24.

*United States,* 346 A.2d 504 (D.C.App.1975), and *In re Cys,* 362 A.2d 726 (D.C.App.1976).

The judgment of the trial court is dated "this 29th day of November, 1981," although the record makes clear that this is merely a typographical error and that September 29 is the correct date. It is file-stamped October 1, 1981; however, the docket sheet reflects that it was entered on the docket on September 29. Our rules provide that for the purpose of noting an appeal, a judgment "is deemed to be entered when it is entered in the civil docket by the clerk"—in this case, September 29, 1981. D.C.App.R. 4–II(a)(3). Appellant's notice of appeal was filed on October 30, 1981, thirty-one days later. We are thus unanimous [1] in concluding that if this appeal were taken from the September 29 judgment, it would be untimely, since the notice of appeal was filed on the thirty-first day, one day beyond the jurisdictional thirty-day limit imposed by D.C.App.R. 4–II(a)(1).

I agree with my colleagues that the order which is actually the subject of this appeal is the one entered on February 26, 1982, taxing costs in specific amounts to be paid to specific individuals. *See Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 36–37 (D.C.App.1979). It is at this point that the majority and I part company. In my view, *West v. United States, supra,* requires us to dismiss this appeal because appellant filed her notice of appeal almost four months prematurely. The fact that *West* is a criminal case and this is a civil case is of no legal significance; there are no "concerns" applicable to *West* which do not apply with equal force to the case at bar. *Carr v. Brown,* 395 A.2d 79 (D.C.App.1978), on which my colleagues apparently base their conclusion that we have jurisdiction, is distinguishable on its facts. Our resolution of the jurisdictional issue in *Carr* depended on our interpretation of two successive or-

1. See footnote 1 of the majority opinion, *supra* at 1365.

ders of the trial court and on whether the second order altered or merely explained the first. As I read *Carr,* it did not establish one rule for civil appeals and another rule for criminal appeals.

In short, I believe that the precedential effect of *West* and *Cys* remains undiluted. Because appellant did not file a notice of appeal "within thirty days *after* entry of the ... order from which the appeal is taken," D.C.App.R. 4–II(a)(1) (emphasis added)—*i.e.,* within thirty days after February 26, 1982—I would hold, on the basis of *West* and *Cys,* that this court lacks jurisdiction to entertain her appeal.[2]

---

2. Were I to conclude that we had jurisdiction, I would join in the majority's disposition of the

case and in Judge Kern's opinion on the merits.